Stacey D. COOKE, Plaintiff,

v.

ALLSTATE MANAGEMENT CORPORA-
TION, d/b/a The Park Apartments,
Defendant.

Civ. A. No. 3:89–1476–15.

United States District Court,
D. South Carolina,
Columbia Division.

Feb. 28, 1990.

**1206**

Joseph H. McCulloch, Jr., Swerling, Harpootlian & McCulloch, Columbia, S.C., for plaintiff.

Charles E. Hill, Robert A. Bernstein, Columbia, S.C., for defendant.

### ORDER

HAMILTON, District Judge.

This action arises out of a criminal assault that occurred at approximately 3:00 a.m. on September 15, 1988. Plaintiff was asleep in her apartment at The Park apartment complex in Richland County, South Carolina when an intruder entered her apartment through the sliding glass door to the balcony. Plaintiff alleges that the at-tacker was able to reach the balcony of her second floor apartment by using a ladder left nearby. The attacker attempted to rape plaintiff and stabbed her several times before fleeing. Henry Mack Taylor, Jr. pled guilty to first degree burglary and attempted criminal sexual assault.

Plaintiff has brought this action against Allstate Management Corporation, the corporation that managed The Park apartment complex, alleging two causes of action: negligence and fraud. The matter is currently before the court on defendant's motion for summary judgment on both causes of action. After considering the arguments by the parties, the record, and the applicable law, this court has determined that summary judgment is appropriate on plaintiff's fraud claim and on all of plaintiff's allegations of negligence except the claim that by leaving an unsecured ladder nearby, defendant undertook an affirmative act that it did not perform with due care. Rule 56, Fed.R.Civ.Proc.

### I. *Negligence*

#### A. Introduction

Plaintiff alleges that defendant was negligent in:

1. failing to adequately light the outdoor common areas around the buildings;
2. failing to hire security guards;
3. failing to provide adequate locks on the sliding glass doors;
4. failing to warn of past assaults in the complex;
5. failing to have Henry Mack Taylor, Jr. removed from the premises;
6. failing to warn of Taylor's presence;
7. failing to examine and improve security measures;
8. failing to maintain maintenance equipment safely on the premises.

Complaint, para. 14.

Defendant argues that summary judgment is appropriate on the negligence cause of action on following grounds: (1) Exculpatory Clause—The lease contained a provision relieving defendant of liability; (2) Duty—South Carolina law imposes no duty on a landlord to provide protection

against the criminal activities of third parties; (3) Proximate Cause—Even if a duty did exist, the criminal· activity of a third party constitutes, as a matter of law, a superseding cause, severing the chain of causation.

### B. Exculpatory Clause

■ The lease signed by plaintiff provides that defendants would not be liable for

> any loss, injury or damage to person or property ... arising out of the failure of any appliance ... or caused by any casualty or catastrophe including without limitation ... criminal acts, or from any other cause whatsoever, whether or not due to negligent acts or omissions by You, your family and guests or by any third parties, including without limitation other occupants of this apartment, and you assume all risk and agree to indemnify Us from any such loss, injury, or damage.

Lease, para. 10. Defendant, emphasizing plaintiff's education, argues that this exculpatory clause is enforceable and bars plaintiff's cause of action based on negligence. Plaintiff argues that the clause is unenforceable, or, alternatively, that the clause should be narrowly construed in such a way as to allow plaintiff's allegation of defendant's negligence.

South Carolina law on exculpatory clauses in contracts makes clear that such clauses are disfavored:

> Contracts that seek to exculpate a party from liability for the party's own negligence are not favored by the law. An exculpatory clause ... is to be strictly construed against the party relying thereon. "It will never be construed ... to exempt [a party] from liability for his own negligence ... in the absence of explicit language clearly indicating that such was the intent of the parties.

*South Carolina Elec. and Gas Co. v. Combustion Engineering, Inc.,* 283 S.C. 182, 322 S.E.2d 453, 458 (Ct.App.1984) (holding that exculpatory clause limiting liability for negligent manufacture did not exculpate defendant from alleged negligent design).

The South Carolina Supreme Court has held that such clauses "may or may not be enforceable," depending upon considerations of·public policy. The court has listed as examples of violations of public policy attempts to exculpate "for negligence in the performance of a duty of public service, or where a public duty is owed, or public interest is involved, or where public interest requires the performance of a private duty, or when the parties are not on roughly equal bargaining terms." *Pride v. Southern Bell Telephone and Telegraph Co.,* 244 S.C. 615, 138 S.E.2d 155 (1964). *See also Murray v. The Texas Co.,* 172 S.C. 399, 174 S.E. 231 (1934) ("even under the view that a person may under some circumstances contract against the performance of ... duties [a party owes independent of the contract], he cannot do so where the interest of the public requires the performance thereof, or where, because the parties do not stand on a footing of equality, the weaker party is compelled to submit to the stipulation")

In the case most helpful for our purposes, the South Carolina Supreme Court interpreted an extremely broad exculpatory clause as not including negligent acts of the party who drafted the clause. The clause at issue in *Murray v. The Texas Co.* provided that an agent would hold the company harmless from "all claims, suits and liabilities of every character whatsoever arising from the existence or use of the equipment at said station." *Id.* 174 S.E. at 232. The court held that

> the provision of a contract relieving one of the parties thereto of liability for his or its own negligence should be clear and explicit.... The defendant itself wrote the provision into the contract for its own benefit. It could have plainly stated, if such was the understanding of the parties, that the plaintiff agreed to relieve it in the matter from all liability for its own negligence, As it did not do so, we resolve all doubt, as we should, in favor of the plaintiff, and hold that it was not the intent of the parties to give

to the contract as written the effect claimed by the company.

*Id.*

In light of the extremes to which the South Carolina courts have gone to avoid enforcing a broad reading of an exculpatory clause, this court is confident that the clause does not bar plaintiff's negligence claim. A close reading of the clause reveals that the clause does not explicitly exculpate defendant from liability for its own allegedly negligent acts. The clause does mention the negligence of the lessee and of third parties, while glaringly omitting any reference to the negligence of defendant. Although it does mention criminal acts, the clause does not tie those criminal acts to any negligence of defendant. Because this is a form contract, plaintiff did not have equal bargaining power, and most importantly, the clause does not explicitly include the negligent acts of defendant, this clause does not bar plaintiff's negligence claims.

C. Statutory Basis of Duty

■ Plaintiff argues that the South Carolina Residential Landlord and Tenant Act (SCRLTA) imposes upon a landlord the duty to provide protection against criminal assault. Plaintiff points specifically to S.C. Code Ann. § 27–40–440(a)(2), which requires that a landlord "do whatever is reasonably necessary to put and keep the premises in fit and habitable condition." Onto that section, plaintiff superimposes S.C.Code Ann. § 27–40–20(a), which provides that the SCRLTA "must be liberally construed and applied to promote its underlying purposes and policies," and S.C.Code Ann. § 27–40–20(b)(2), which encourages "landlords and tenants to maintain and improve the quality of housing." Plaintiff argues that these directives distinguish the S.C. Act from the acts of other jurisdictions in which arguments similar to plaintiff's have been rejected.

Defendant, on the basis of an interpretation of the Virginia Landlord/Tenant Act, argues that the duty of the landlord to keep the premises fit and habitable does not extend to protection against criminal

activity. Defendant relies upon *Deem v. Charles E. Smith Management, Inc.,* 799 F.2d 944 (4th Cir.1986), in which the court interpreted Va.Code § 55–248.13(a)(3). That section requires a landlord to "keep all common areas shared by two or more dwelling units of the premises in a clean and safe condition." The court interpreted the phrase "safe condition" as referring to the protection of the tenant "from injuries caused by failures of the building—collapsing stairs, faulty walls, dangerous windows." *Id.* at 946. The Act, the court concluded, did not impose any duty on the landlord to protect against criminal activity. *Id.*

The SCRLTA does not impose any duty on a landlord to protect tenants from criminal activity. The reasoning of the *Deem* court is sound, and applies to the S.C. Act. In fact, the word "safe," which was the basis of plaintiff's argument in *Deem* (and similar arguments in other jurisdictions), is absent from the SCRLTA. The S.C. Act uses the terms "fit" and "habitable." It is an even greater stretch to construe those terms to include protection against criminal activity than it was to so construe the word "safe." The South Carolina Residential Landlord and Tenant Act does not impose a duty on a landlord to provide protection to his tenants against criminal activity of third parties. *See also Williams v. William J. Davis, Inc.,* 275 A.2d 231 (D.C. 1971); *De Koven v. 780 West End Realty Co.,* 48 Misc.2d 951, 266 N.Y.S.2d 463 (1965); *Pippin v. Chicago Housing Authority,* 78 Ill.2d 204, 35 Ill.Dec. 530, 399 N.E.2d 596 (1979). *See generally,* Annotation *Landlord's Obligation to Protect Tenant Against Criminal Activities of Third Persons,* 43 A.L.R.3d 331 § 5(a) (1972).

D. Common Law Basis of Duty

Having determined that the SCRLTA does not impose a duty on landlords to protect tenants from criminal activity, the initial question becomes whether South Carolina common law imposes such a duty. "The breach of legal duty is essential to negligence and such a duty is that which the law requires to be done or foregone

with respect to a particular individual or the public at large." *South Carolina Electric & Gas Co. v. Utilities Construction Co.*, 244 S.C. 79, 88, 135 S.E.2d 613, 617 (1964). *See also Kershaw Motor Co. v. Southern Railway Co.*, 136 S.C. 377, 382, 134 S.E. 377, 378 (1926). The question of whether a duty is owed is a question of law for the court to determine. *Ballou v. Sigma Nu General Fraternity*, 291 S.C. 140, 352 S.E.2d 488 (Ct.App.1986); *Araujo v. Southern Bell Telephone and Telegraph Co.*, 291 S.C. 54, 351 S.E.2d 908 (Ct.App. 1986). This court's task, in the absence of South Carolina case law on point, is to forecast how the South Carolina Supreme Court would view the question of a landlord's duty under these circumstances.[1] *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *Wilson v. Ford Motor Co.*, 656 F.2d 960 (4th Cir.1981).

Plaintiff and defendant agree that South Carolina common law imposes on a landlord no general affirmative duty to maintain the physical condition of the premises. *See, e.g., Young v. Morrisey*, 285 S.C. 236, 329 S.E.2d 426 (1985) ("traditionally, under the law of South Carolina, a landlord owes no duty to maintain leased premises in a safe condition"). From that well-established rule, defendant reasons that South Carolina would not, under any circumstances, impose on landlords a duty to protect their tenants from criminal activity. Plaintiff relies on exceptions to that general rule, arguing that she has alleged facts that would bring the case within each of the four exceptions, and that it is not a significant extension of South Carolina law to apply those exceptions to foreseeable criminal activity. Those four exceptions are:

| Exception | Allegation |
|---|---|
| Affirmative Acts | Ladder improperly stored |
| Concealed danger | Lurking criminals, improperly stored ladder, inadequate lock |
| Common area | Improperly stored ladder, design of the complex |
| Undertaking | Inadequate locks, advice about safety |

Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, pp. 8–14.

The cases agree that a landlord who increases the risk of loss from criminal activities is under a duty to exercise reasonable care to protect his tenants against the foreseeable risk of harm arising out of his action. *See* Annotation, 43 A.L.R.3d 331, § 7(b). The cases falling within this category include a landlord placing keys in an accessible place and a landlord leaving an apartment door unlocked. *See, e.g., McCappin v. Park Capitol Corp.*, 42 N.J. Super. 169, 126 A.2d 51 (1956); Annotation, 43 A.L.R.3d 331. Plaintiff has alleged that defendant's improper storage of the ladder brings it within this rule, which she argues is consistent with the South Carolina "affirmative act" exception to the rule against landlord liability. Defendant responds that no such duty is owed, and that even if South Carolina law does impose such a duty, there is no evidence to support plaintiff's allegation that The Park's ladder was used.

■ It is necessary first to determine whether plaintiff's interpretation of the affirmative act rule is correct. Generally speaking, negligence principles impose a duty to act with due care regardless of the context. Whether a person was under a duty to take a particular action is irrelevant for purposes of this standard. "[O]ne who assumes to act, even though under no obligation to do so, may become subject to the

---

1. The wide range of approaches taken by courts in other jurisdictions establishes only that support can be found for practically any position. *See generally*, Annotation, *Landlord's Obligation to Protect Tenant Against Criminal Activities of Third Persons*, 43 A.L.R.3d 331. That annotation attempts to summarize the case law as follows:

 Courts considering whether a landlord is under a duty to protect his residential tenants against criminal activities of third persons generally have held that no such duty exists merely by reason of the relationship, but that a duty may arise under the particular circumstances of individual cases. Thus, it has been said in a number of cases that a landlord is not an insurer of the safety of his residential tenants against third-person criminal activities, and that any liability of a landlord for injuries or damages resulting from such activities must be predicated either upon the breach of a contractual or statutory obligation, or upon a showing of negligence constituting the proximate cause of the loss.
 *Id.* at § 2(a), p. 335.

duty to act with due care." *Crowley v. Spivey*, 285 S.C. 397, 406, 329 S.E.2d 774, 780 (Ct.App.1985). Having established that South Carolina law imposes a duty on a person to use reasonable care when any affirmative act is undertaken, it becomes necessary to examine the record for evidence relating to this duty in this case.

■ Plaintiff alleges that defendant negligently maintained the premises by leaving an unsecured ladder outside, which plaintiff's assailant then used to climb onto her balcony. Henry Mack Taylor testified in his deposition that he used a wrought iron railing that he found on the patio of a nearby apartment to climb onto plaintiff's balcony. Deposition of Henry Mack Taylor, p. 26. He also testified that he did not use any property of The Park apartments to facilitate the break-in. *Id.* at 27. Defendant also points to the deposition testimony of Dwight Kraschnewski, a maintenance worker at The Park apartments, who testified that all ladders kept by The Park are stored in a building, except one extension ladder, which is kept outside. Deposition of Dwight Kraschnewski, p. 29. The extension ladder is kept "outside of Building 15–B between the bushes and the building, actually between the condensing units and the building." *Id.* Defendant argues that the testimony of Taylor and Kraschnewski refutes plaintiff's theory that Taylor used The Park's ladder to break into the apartment.

Plaintiff testified in her deposition that immediately after the attack, she saw a ladder leaning against her balcony. Deposition of Stacey Cooke, p. 63. She stated that the assailant grabbed the ladder and ran away. *Id.* at 64. She described the ladder as "gray," "short," and "light in color." *Id.* She stated that it "could have been" an extension ladder, and speculated that the ladder used "could have been" a ladder stored nearby and owned by The Park. *Id.* at 65, 71.

Construing the evidence in the light most favorable to the plaintiff, a factual issue has arisen as to whether a ladder was used by Taylor to enter plaintiff's apartment. The question on which there is scant evidence, however, is whose ladder was used. Plaintiff has shown that there was an unsecured ladder nearby that could have been used. Based on the marks made by Kraschnewski on a map of the apartment complex, it appears that The Park's unsecured ladder was located not far from plaintiff's apartment. *See* Exhibit 1 to deposition of Kraschnewski. Although this evidence is weak at best, this court will give plaintiff the benefit of every reasonable inference at this stage. There is a factual issue as to whether a ladder was used, and there is at least some evidence that The Park's ladder was unsecured nearby. For that reason, defendant's motion for summary judgment on the negligence claim based upon the storage of the ladder is denied.

Plaintiff attempts to bring the remaining allegations of negligence within other established exceptions to the rule against landlord liability. First, plaintiff argues that the concealed danger exception would include lurking criminals, the improperly stored ladder, and inadequate locks on the sliding glass doors. Second, plaintiff argues that the "common areas" exception would include the open design of the complex and the improper storage of the ladder. Third, plaintiff argues that the "undertaking" exception, as she describes it, would include the inadequate lock and the advice given regarding safety. The correctness of plaintiff's argument depends upon the reach of each of these exceptions under existing South Carolina law. Because the South Carolina cases do not give any indication that those exceptions include the type of allegations made by plaintiff, this court concludes that South Carolina law does not impose a duty on the landlord to take affirmative action to protect tenants from criminal activity.[2]

---

**2.** There is a fundamental difference between imposing a general duty to perform with due care all affirmative acts, and a duty to take certain affirmative precautions. The former is the general negligence standard the common law imposes on all persons regardless of the context (see affirmative act discussion, *supra* ), and the latter depends upon the particular circumstances. The circumstances under which South Carolina imposes affirmative duties on

■ In the case cited by plaintiff as support for her argument that South Carolina law requires a landlord to warn ·of concealed dangers on the premises, the South Carolina Supreme Court stated that many jurisdictions permit recovery "where injury results from a defective condition known to the landlord and concealed by him from the tenant." *Timmons v. Williams Wood Products Corp.*, 164 S.C. 361, 162 S.E. 329 (1932). From that dictum, plaintiff asks this court to interpret South Carolina law as allowing recovery for a landlord's failing to advise of lurking criminals, failing to properly store the ladder, and failing to install stronger locks on the sliding glass doors. Plaintiff, acknowledging that the South Carolina courts have not applied the exception in the way she seeks to do so now, has ripped the law on concealed dangers from its context (the physical soundness of the premises). Criminal activity is a completely different type of danger than rotting stairways, and none of the concealed dangers alleged by plaintiff in this case can be said to fall anywhere near the existing parameters of that exception. The South Carolina Supreme Court has not indicated that it intends under the label "concealed danger" to shift to the landlord the responsibility for protecting tenants against one of the dangers of modern urban life. Because the leap plaintiff requests this court to make is simply too great, and because the proposed extension would revolutionize South Carolina landlord/tenant law, this court rejects the argument that the concealed danger exception

has any application to the facts of this case.[3]

■ Plaintiff also argues on the basis of the "common areas" exception. South Carolina law provides that a landlord must maintain common areas of an apartment complex that remain under his control: "The law ... creates a legal duty to keep the same in repair and to operate properly such parts of the premises which the lessor reserves possession and control of for the common use of several tenants and this is peculiarly applicable to halls, entrances, porches or stairways of which no particular tenant has exclusive possession or control." *Daniels v. Timmons*, 216 S.C. 539, 59 S.E.2d 149 (1950). This rule clearly has never been applied in South Carolina to anything except physical injuries resulting directly from the *condition* of the premises themselves. For the same reasons discussed in response to the "concealed dangers" argument, this court rejects the application of the "common areas" exception to criminal activity under South Carolina law. Again, to extend this rule to include a duty to protect against criminal activity would stretch it well beyond its current limits and change the landlord/tenant relationship dramatically. Plaintiff has presented evidence that some jurisdictions have made this extension; many others have not.[4] Faced with the task of predicting what South Carolina would do, this court has concluded that it would not expand the realm of landlord liability to the extremes advocated by plaintiff.[5]

landlords are limited, and plaintiff has not shown that they exist here.

3. Plaintiff argues that at least one other jurisdiction has made that leap on the basis of this theory. *See O'Hara v. Western Seven Trees Corp.*, 75 Cal.App.3d 798, 142 Cal.Rptr. 487 (1977). Plaintiff did not include a copy of this case as required by Local Rule 12.05(d). In any event, South Carolina recognizes a duty owed by a landlord to a tenant only in narrowly defined circumstances, and it has not followed California's liberal expansion of that duty in this or other contexts.

4. *See, e.g., Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 207 S.E.2d 841 (1974). In that case, the Virginia Supreme Court recognized a landlord's duty "to maintain the areas over which he has

control in good repair and free from latent defects, rather than the duty to police." The court concluded that because the landlord/tenant relationship is not a "special" one in the eyes of the law, and because a landlord is not an insurer of his tenants' safety, a landlord owes no duty to provide protection against criminal acts.

5. Plaintiff attempts to bring the storage of the ladder and the general layout of the complex within this exception. Plaintiff never makes clear how the design of the complex is allegedly negligent. Whatever the basis for the claim, however, plaintiff has cited no South Carolina case imposing an affirmative duty on landlords to install gates, hire guards, or build fences. Despite plaintiff's attempts to apply the com-

Finally, plaintiff attempts to expand the rule that a landlord's repairs must be performed with due care. *See, e.g., McQuillen v. Dobbs,* 262 S.C. 386, 204 S.E.2d 732 (1974). This rule is nothing more than a specific application of the general negligence standard discussed in this order, and this court does not disagree with its possible relevance to some allegations arising out of violence committed against tenants. For example, if a plaintiff offers evidence that a landlord had been asked to repair a lock on a door, and that the work was performed negligently, a crime committed by a person entering through that door may present an actionable negligence claim against the landlord under South Carolina law. Plaintiff's attempt to use this rule is not nearly so compelling in this case, however. Plaintiff merely alleges that the locks chosen for all sliding glass doors in the complex were inadequate. There is nothing to distinguish this particular lock from others in the complex, or to indicate that it malfunctioned. It is a far cry from established principles of South Carolina law to conclude that a landlord's use of standard sliding glass doors with standard locks is somehow actionable under the principles discussed in *McQuillen v. Dobbs.* To hold otherwise would result in the exception swallowing the rule, and would impose something approaching strict liability on landlords who use accepted materials and devices in their apartment buildings.

For similar reasons, plaintiff's attempt to bring the comments of defendant's agent into this rule must fail. Plaintiff argues that when defendant provided advice about the safety of the complex, it did so negligently. Plaintiff relies upon *Garrett v. Snedigar,* 293 S.C. 176, 359 S.E.2d 283 (Ct.App.1987), in which the court of appeals held that genuine issues of material fact prevented summary judgment on an allegation that an investment advisor had not investigated the soundness of a partnership venture with due care. South Carolina law imposes a duty of due care in giving advice when the advisor has a pecuniary interest in the transaction. *Id. See also Winburn v. Insurance Co. of North America,* 287 S.C. 435, 441, 339 S.E.2d 142, 146 (Ct.App.1985). That rule has never been extended as far as plaintiff would like it to reach now, however. There is again a world of difference between a financial advisor who performs his job negligently and a rental agent making casual conversation about an apartment complex. It raises no issue of material fact to allege that a comment that the complex is safe is "advice." Such a casual and general comment certainly does not fall within the current boundaries of the law on this point. *See also Folkens v. Hunt,* 290 S.C. 194, 348 S.E.2d 839 (Ct.App.1986) (public accountant who undertakes a task on behalf of a client owes a duty to perform that task with due care).

The South Carolina Court of Appeals has described the process by which the common law has developed, resulting in a duty being imposed under some circumstances and not others:

> There is no formula for determining duty; a duty is not sacrosanct in itself but only an expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection. Suffice it to say that a multiplicity of factors come into play when courts contemplate the question of duty. These factors include the policy of deterring future tortfeasors, the moral culpability of the tortfeasor and numerous other conceivable factors; duty is seen in general terms as requiring a person or corporation to conform his or its conduct to a standard which is adequate to protect others from unreasonable risk of harm.

*Araujo v. Southern Bell Telephone and Telegraph Co.,* 291 S.C. 54, 351 S.E.2d 908, 910 (Ct.App.1986). Aware of those policy considerations in this case, this court is simply not convinced that the South Carolina Supreme Court would recognize a duty as argued by plaintiff. Plaintiff's at-

mon areas cases to this allegation, those cases do not hold or even imply that such a duty exists.

tempt to extend the duty owed by store owners and innkeepers in South Carolina is simply not persuasive in light of the cautious approach the South Carolina appellate courts have taken even in those contexts.

In *Shipes v. Piggly Wiggly St. Andrews, Inc.*, 269 S.C. 479, 238 S.E.2d 167 (1977), the supreme court implied that under certain circumstances, a store owner may be liable for injuries suffered by an invitee as a result of criminal attack. The court cited comment (f) to Restatement of Torts (Second) § 344, which provides that "[i]f the place or character of [a storeowner's] business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, ... he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection." The court went on to assume that a duty was owed, but concluded that the evidence at trial did not show a breach of the duty. *Id.* 238 S.E.2d at 169. *See also Bullard v. Ehrhardt*, 283 S.C. 557, 324 S.E.2d 61 (1984) (storeowner owes duty of reasonable care to protect invitees against criminal attacks that he knows or has reason to know); *Munn v. Hardee's Food System, Inc.*, 274 S.C. 529, 266 S.E.2d 414 (1980).

In *Daniel v. Days Inn of America, Inc.*, 292 S.C. 291, 356 S.E.2d 129 (Ct.App.1987), the court declined to address the issue head-on of whether a hotel owes a duty to protect its guests from foreseeable criminal conduct. Concluding that defendant had not properly raised the issue on appeal, the court determined that "it should not be allowed to do so now." *Id.* 356 S.E.2d at 131. The court again cited the Restatement (Second) of Torts § 344. *See also Courtney v. Remler*, 566 F.Supp. 1225 (D.S.C.1983), *aff'd*, 745 F.2d 50 (4th Cir. 1984) (analogizing from the possessor/invitee and common carrier/passenger relationships, district court concludes that South Carolina would impose duty on innkeeper to provide reasonable protection against criminal act).

■ On the basis of these cases, plaintiff argues that the South Carolina Supreme Court would extend the exceptions to the general rule against landlord liability to include an affirmative duty to protect tenants from reasonably foreseeable criminal conduct. That argument rests on the assumption that the relationships of storeowner/invitee and innkeeper/guest are analogous to the relationship of landlord/tenant. This court is not convinced that the analogy is a sound one, and agrees with the Pennsylvania Supreme Court, which has articulated the key differences between these relationships:

> [P]laces to which the general public are invited might indeed anticipate, either from common experience or known fact, that places of general public resort are also places where what men can do, they might. One who invites all may reasonably expect that all might not behave, and bears responsibility for injury that follows the absence of reasonable precaution against that common expectation. The common areas of an apartment complex are not open to the public, nor are the general public expected or invited to gather there for other purposes than to visit tenants.
>
> Tenants in a huge apartment complex ... do not live where the world is invited to come. Absent agreement, the landlord cannot be expected to protect them against the wiles of felonry any more than the society can always protect them upon the common streets and highways leading to their residence or indeed in their home itself.
>
> An apartment complex is not a place of public resort where one who profits from the very public it invites must bear what losses that public may create. It is of its nature private and only for those specifically invited. The criminal can be expected anywhere, any time, and has been a risk of life for a long time.

*Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 745–46 (1984). Because this court agrees that the landlord/tenant relationship is fundamentally different than the relationships for which South Carolina law will impose a duty to protect against criminal activity, it declines plaintiff's invitation

to extend the law of South Carolina so far beyond its current boundaries.

### E. *Proximate Cause*

Because under general South Carolina negligence law, all affirmative acts must be performed with due care, plaintiff has shown that defendant had a duty to use due care when maintaining the premises and storing equipment. It is necessary, therefore, to turn to defendant's argument that proximate cause is lacking as a matter of law. Defendant argues that the criminal activity of Taylor constitutes a superseding cause that would break the chain of causation. Plaintiff argues that several complaints had been received by defendant about Taylor's presence on the premises, and that he was a suspected peeping tom. After considering the deposition testimony of defendant's agents, this court cannot determine as a matter of law that the criminal activity by Taylor was unforeseeable and that proximate cause is lacking.

 South Carolina law on proximate cause as applied to criminal activity makes clear that a criminal act is not necessarily a superseding cause as a matter of law. The original negligent actor is not relieved of liability unless the subsequent criminal act was unforeseeable. In *Shepard v. South Carolina Dept. of Corrections*, 385 S.E.2d 35 (Ct.App.1989), for example, the South Carolina Court of Appeals affirmed the factfinder's conclusion, but found the proximate cause issue to be a close one. In that case, plaintiff sued the South Carolina Department of Corrections after a criminal escaped from its custody and went on a crime spree. The court concluded that the trial court could have determined that the criminal activity was not foreseeable, which would relieve the original negligent actor of its liability. Calling the factual question of foreseeability a "close one," the court affirmed the trial court's finding. *See also Daniel v. Days Inn of America, Inc.*, 292 S.C. 291, 356 S.E.2d 129 (Ct.App.1987) (hotel's argument that it could not have foreseen that one of its guests would attack another guest is a question of proximate cause that "should not be decided at the summary judgment stage"); *Cf.* Annota-

tion, 43 A.L.R. 331 §§ 8–9 (cases approaching the proximate cause issue by examining foreseeability of criminal activity in general, as well as specific criminal acts by known persons).

 The evidence in the record establishes that the management, at the very least, suspected Henry Mack Taylor of criminal activity on the premises. Connie O'Connor Harris, defendant's regional property manager, testified in her deposition that she was aware of criminal activity in general on the premises, both before her arrival in January, 1986, and after that date. Deposition of Harris, pp. 10, 26. Harris testified that she knew that Henry Mack Taylor was staying with a tenant in the complex. *Id.* at 48–49. And finally, most important to this court's examination of the foreseeability issue, Harris testified that tenants had complained of peeping tom activity by a black male whose description she recognized as matching Taylor's. *Id.* at 53–55. As a result of those complaints, Harris "told the police about [Taylor]." *Id.* at 55.

Carolyn Caulder, defendant's leasing agent, testified that after an attempted break-in into the apartment of a tenant named Sherry Hensley in August, 1988, Caulder and other agents and employees of defendant "probably" discussed Henry Mack Taylor as a suspect. Deposition of Caulder, pp. 21–22. And finally, Denise Porter, another leasing agent, also testified that she thought of Taylor after hearing tenants' descriptions of the peeping tom. Deposition of Porter, pp. 88–89.

Because plaintiff has offered evidence that Henry Mack Taylor was suspected of criminal activity on the premises of The Park, plaintiff is correct that the court cannot rule as a matter of law that such activity constituted a superseding cause which would break the chain of causation. Proximate cause is generally a question for the jury, and plaintiff has presented some evidence that Mack was suspected of such activities. For that reason, this court cannot rule as a matter of law that the alleged negligence of defendant was not the proximate cause of plaintiff's injuries.

## II. *Fraud*

Plaintiff alleges that defendant represented to plaintiff that The Parks apartment complex was safe, when in fact, the complex was not safe. Plaintiff has pled all nine elements of fraud, alleging that her decision to rent the apartment was fraudulently induced. Citing her deposition testimony, plaintiff argues that several statements by defendant's agents were representations of material facts known to be false. Plaintiff alleges that Carolyn Caulder, a rental agent with whom she met on her third visit to the complex, agreed with her statement that "she thought it was a safe place." Deposition of Stacey Cooke, pp. 35–36. Plaintiff described her second visit to the complex (this time with her mother):

> Well, my mother and I were both saying that we thought it was more safe. And, [the agent] was saying there is really nothing to worry about because this complex is really safe.... She said a lot of people sleep with their sliding glass doors open because it is really shaded.... She said, "So it's safe."

Deposition of Stacey Cooke, p. 31. The agent also allegedly responded to a question from Martha Cooke, Stacey's mother, about the safety of the premises by stating: "No, it's safe, the apartment complex and for the money it is a really nice place to live, reasonable." Deposition of Stacey Cooke, p. 31. Martha Cooke's version of the exchange concerning safety is the same as her daughter's:

Q. So, you made the representations that the place looks safe?
A. Yes.
Q. Was there any other discussion whatsoever about safety?
A. No, other than she agreed yes.
Deposition of Martha Cooke, p. 35.

Defendant argues that plaintiff cannot establish three of the nine elements of fraud: representation of fact, materiality, and reliance.[6]

██ Defendant argues that the agent's comments regarding safety are representations of opinion rather than fact, and that an action for fraud may not lie for an expression of opinion. Plaintiff argues that the agent's responses to the inquiries regarding safety were factual, or, alternatively, that they were hybrids of fact and opinion. Finally, as a third alternative, plaintiff argues that if they were opinion, the facts underlying that opinion would support the fraud claim.

Explaining the difference between fact and opinion, the South Carolina Supreme Court has held as a matter of law that a representation that a person was a "competent mechanic" is opinion. *Winburn v. Insurance Co. of North America*, 287 S.C. 435, 339 S.E.2d 142 (Ct.App.1985). In that case the court cited with approval an Arizona case holding that a statement by a bank official that a person was a "good businessman" was an expression of opinion rather than fact. *Id.* 339 S.E.2d at 146, citing *Springer v. Bank of Douglas*, 82 Ariz. 329, 313 P.2d 399 (1957).

---

**6.** In arguing that the statement cannot be considered material to plaintiff's decision to rent the apartment, defendant relies primarily upon the absence of any specific questions asked by plaintiff or her mother. This court cannot agree as a matter of law that safety was not material to plaintiff's decision. Plaintiff demanded her mother's approval before renting the apartment, and her mother was clearly very concerned about safety. In addition, plaintiff's decision to rent a second floor apartment was apparently influenced by her perception that it would be safer than one on ground level. The fact that specific questions were not asked about the type of problems that had taken place at The Park does not lead to the inevitable conclusion that the matter was not material.

In addition, defendant argues that plaintiff's deposition testimony shows as a matter of law that plaintiff did not rely upon the comments of the agents regarding safety. Defendant uses one answer in the deposition in which plaintiff listed the factors that led her to rent the apartment, and failed to mention safety. The fact that "safety" is missing from one significant answer does not, as matter of law, establish that she did not rely upon the statement. She did indicate that she would have hesitated or thought differently had she been told of crime at the complex. Deposition of Stacey Cooke, p. 109. For that reason, the court cannot find as a matter of law that plaintiff did not rely upon the statement about safety.

To be contrasted with the court's holding the statement in *Winburn* to be opinion is the court's conclusion in *Gilbert v. Mid-South Machinery Co., Inc.*, 267 S.C. 211, 227 S.E.2d 189 (1976). In that case the court upheld the jury's conclusion that a statement that a business is "profitable" is one of fact. The court then went on to give some guidance in drawing the line between fact and opinion: "The distinction between fact and opinion is broadly indicated by the generalization that what was susceptible of exact knowledge when the statement was made is usually considered to be a matter of fact." *Id.* 227 S.E.2d at 193.

Another attempt to draw a general distinction between fact and opinion can be found in the Restatement of Torts: An opinion is a statement "expressing (a) the belief of the maker, without certainty, as to the existence of a fact; or (b) his judgment as to quality, value, authenticity, or other matters of judgment." Restatement (Second) of Torts § 538A. The comment to this section goes on to explain:

> One common form of opinion is a statement of the maker's judgment as to quality, value, authenticity or similar matters as to which opinions may be expected to differ. Thus the statement that an automobile is a good car is a relative matter, depending entirely upon the standard set as to what is a good automobile and what is not, and it is a matter upon which individual judgments may be expected to differ. The maker of a statement of this nature will normally be understood as expressing only his own judgment.

There can be no doubt but that the comment that an apartment complex is "safe" is one of opinion rather than fact. It simply reflects the speaker's judgment about the quality of life at The Park apartments. Safety is a vague term that would not be "susceptible of exact knowledge" in the way that the profitability of a business would be. "Safe," like "good," is a word whose meaning, in the language of the Restatement, "depends entirely upon the standard set." No more specific questions were asked, no more specific statements made.[7] The response, casual and general, was simply the agent's judgment and opinion about safety on the complex. It is certainly not the kind of statement that South Carolina law would support as fraudulent.

### III. *Conclusion*

Because the statements by defendant's agent concerning the safety of the complex can only be characterized as opinion, they do not support a fraud claim. Defendant's motion for summary judgment as to plaintiff's fraud claim is granted. Rule 56, Fed. R.Civ.Proc.

On the negligence claim, only one allegation made by plaintiff is both cognizable under existing South Carolina law and arguably supported by the record. For that reason, defendant's motion for summary judgment is granted on all causes of action except the allegation that defendant was negligent in storing the ladder. Rule 56, Fed.R.Civ.Proc.

IT IS SO ORDERED.

---

7. Plaintiff urges the court to read plaintiff's deposition as showing that a more specific allegation was made. The testimony is as follows: "My mother ... said, you know, 'Is it safe around here" and "Have you had any problems?' And [the agent] said, 'No, it's safe, the apartment complex and for the money it is a really nice place to live, reasonable." This testimony does not, as plaintiff argues, establish that defendant's agent fraudulently represented that there had been no criminal activity on the premises. The answer "No, it's safe" is no more specific than the other alleged statements about the safety of the premises. The agent's answer to what appears in plaintiff's deposition as a double question is, like the other comments allegedly made, not a representation of fact upon which a fraud claim may be based.