797 A.2d 851

Suzette HEMMINGS,

v.

PELHAM WOOD LIMITED LIABILITY
LIMITED PARTNERSHIP, et al.

No. 1189, Sept. Term, 2001.

Court of Special Appeals of Maryland.

May 6, 2002.

Laurence A. Marder (Leslie Hayes Russo and Israelson, Salsbury, Clements & Bekman, L.L.C., on the brief), Balti-more, for Appellants.

Philip B. Barnes (Jennifer Ryan Lazenby, Whiteford, Taylor & Preston L.L.P. for appellee, RLA Management, Anthony B. Teelucksingh and Law Office of Robert Graham Fiore for appellee, Pelham Wood Limited), for Appellees.

Argued before DAVIS, KRAUSER, CHARLES E. MOYLAN, JR., (retired, specially assigned), JJ.

DAVIS, J.

Appellant Suzette Hemmings filed a wrongful death and survival action against appellees Pelham Wood Limited Liability Limited Partnership and RLA Management, L.L.P. (RLA), in her individual capacity and as Personal Representative of the Estate of her late husband, Howard W. Hemmings. The suit, filed in the Circuit Court for Baltimore County, alleged negligence by appellees, the owner and property manager of

Pelham Wood Apartments (Pelham Wood), a 400–unit building where Mr. Hemmings was murdered.

Appellee RLA filed a Motion for Summary Judgment on June 11, 2001. After conducting a hearing on July 30, 2001, the trial court granted the motion as to both appellees. Appellant noted this timely appeal on August 2, 2001, presenting three questions, which we combine and rephrase as follows:

Did the trial judge err in granting appellees' Motion for Summary Judgment?

We answer this question in the negative and affirm the judgment of the trial court.

## FACTUAL BACKGROUND

Appellant and her late husband leased from appellees unit A–2, a second-floor apartment in Pelham Wood, which abutted a wooded area. As with all of the apartments in the development, unit A–2 was equipped with deadbolt locks and "Charlie-bars," which secured the sliding glass doors of the apartment balconies. On June 13, 1998, at approximately 1:17 a.m., an unidentified person entered the apartment and shot and mortally wounded appellant's husband. He was able to call "911" for assistance and was coherent when the emergency personnel arrived. He informed them that he did not know his assailant. While traveling to Shock Trauma, he suffered cardiac arrest, and died at 3:54 a.m. According to appellant's complaint, the intruder forcibly entered the apartment via a sliding glass door on the second floor balcony, located at the back of the apartment building. All data collected from the scene similarly suggested that the entry was a forced entry. Indeed, the lock on the sliding door to the apartment was clearly damaged. As of the filing of appellees' motion for summary judgment, however, the police investigation regarding Mr. Hemmings's murder remained ongoing; therefore, the actual events leading up to the murder are still unknown, as none of the parties was able to obtain details of the investiga-

tion.[1]

Prior to June 13, 1998, appellees received numerous complaints from tenants regarding the safety of the premises and the security light that had been broken for an extended period of time. These complaints were corroborated by the more than thirty Baltimore County Police Department Crime Reports filed by Pelham Wood tenants attached to the complaint.[2] It is conceded, however, that during their tenancy, neither appellant nor her husband ever voiced any oral or written complaint to appellees regarding the security of their apartment. At the hearing on appellees' motion for summary judgment, counsel for RLA argued that appellant was merely speculating that the cause of her husband's death was a burglary-related murder. Furthermore, he continued, the reports made by tenants, most pertaining to burglaries or attempted burglaries, were "insufficient to create a duty on the part of the [appellees] to do anything and certainly [did] not [rise] to the level of demonstrating propensity for violent crime [in the apartment complex] . . . It simply indicat[ed] a smattering of property crimes." In response, counsel for appellant contended that it was known "with some assuredness" that the intruder entered the apartment by forcing open the rear sliding door. Moreover, "[i]n 1997 there were two

1. The Baltimore County Police Department investigative synopsis regarding the events of June 13, 1998 reported that "individual(s) unknown at present entered the second floor apartment after forcing the sliding patio door." This report was excluded by the trial court, however, when it granted the Baltimore County Police Department's Motion to Quash Subpoena, filed July 11, 2000.

2. These letters included complaints concerning robbery, threats at gun point by an estranged husband, a shooting incident at the apartment complex, the "constant stream of questionable visitors, or the tormenting by wild young children," vandalism, apartment break-ins, storage break-ins, theft from balconies, theft from common areas, robbery outside of a tenant's apartment allegedly due to poor lighting, drug use in the common areas, possible intruders peeping into tenant windows or patio doors, requests for locks on patio screen doors, complaints that young men were using the apartment entrance for suspicious activities, complaints about increasing fears due to lack of maintenance and unlocked doors.

breaking-and-enterings, a notice of theft at a balcony apartment, which is what Mr. Hemmings lived in, one attempted breaking-and-entering, one armed robbery." Agreeing that appellant failed to provide sufficient evidence that would impose a duty on appellees, the trial court granted their motion.

## STANDARD OF REVIEW

Under Maryland Rule 2–501(e), the court shall enter judgment in favor of the moving party "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." "The purpose of the summary judgment procedure is to decide whether there is an issue of fact sufficiently material to be tried, not to try the case or to resolve factual disputes." *Brown v. Dermer,* 357 Md. 344, 356, 744 A.2d 47 (2000). The movant bears the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. In order to determine whether the trial court should have granted appellees' motion for summary judgment, we must determine if the trial court was legally correct. *Beatty v. Trailmaster Products, Inc.,* 330 Md. 726, 737, 625 A.2d 1005 (1993).

## LEGAL ANALYSIS

Appellant posits that the trial court improperly granted appellees' motion for summary judgment because a dispute as to material fact exists such that would preclude a determination, as a matter of law, that "the murder of Howard Hemmings was not foreseeable, or that the criminal act of the intruder was an unforeseeable, superseding cause." Because the question of whether an act is reasonably foreseeable should be left to the determination of the fact finder, appellant asserts that the decision should be reversed. Appellees[3]

---

**3.** Although only RLA filed a brief, Pelham Wood Limited Liability Partnership "adopts *in toto* the arguments of [RLA] as similarly applicable," pursuant to Md. Rule 8–502(a)(7).

counter that, as appellant's landlord, they owed no duty to protect her or her husband from any violent crimes that occurred within apartment A–2. Moreover, they posit, appellant failed to present any evidence that appellees had any actual or constructive knowledge regarding any violent crimes in the apartment complex that would give rise to any such duty under Maryland law. Finally, they contend that, assuming, *arguendo*, appellees owed and breached some duty to appellant and her husband, his death was proximately caused by an intervening and superseding violent criminal act.

 "The basic elements necessary for a cause of action in negligence 'are a duty or obligation which the defendant is under to protect plaintiff from injury, a failure to discharge that duty, and actual loss or injury to the plaintiff proximately resulting from that failure.' " *Scott v. Watson,*[4] 278 Md. 160, 165, 359 A.2d 548 (1976)(quoting *Peroti v. Williams,* 258 Md. 663, 669, 267 A.2d 114 (1970)). A landlord is obligated to use reasonable and ordinary care to keep common areas safe. *Id.* Because a landlord is not an insurer of the safety of its tenants, he or she is not ordinarily liable to a tenant or guest of a tenant for injuries from a hazardous condition in the leased premises that comes into existence *after* the tenant has taken possession. *Marshall v. Price,* 162 Md. 687, 161 A. 172 (1932). This rule also applies to criminal acts of third parties; "there is no special duty imposed upon the landlord to protect his [or her] tenants against crimes perpetrated by third parties on the landlord's premises." *Scott,* 278 Md. at 166, 359

---

4. We cite *Scott v. Watson* as it establishes the basic principles of Maryland law with regard to the duty owed by a landlord in protecting the safety of his or her tenant. In *Scott,* however, the Court of Appeals was presented with the issue of whether the landlord of an urban apartment complex had a duty to protect tenants from the criminal acts of third parties committed in *common areas within the landlord's control.* The Court ultimately concluded that a duty would be imposed on the landlord only if the landlord had knowledge of increased criminal activity and if the premises were thereby rendered unsafe. *Scott,* however, is not controlling because the case *sub judice* involves an act that occurred within the leased premises. We deem this to be an overriding distinction.

A.2d 548. However, when it can be illustrated that the landlord had knowledge of increased criminal activity on the premises, a duty is imposed on the landlord to undertake reasonable measures to keep the premises secure. *Id.* at 165, 359 A.2d 548.[5]

It is noteworthy that the rules stated above pertain to claims of negligence arising from injuries occurring in the *common areas* of leased premises:

> "Where a landlord leases separate portions of his [or her] property to different tenants and reserves under his [or her] control the passageways and stairways, and other parts of the property for the common use of all tenants[,] he [or she] must then exercise ordinary care and diligence to maintain the retained portions in a reasonably safe condition." *Our recognition of landlord liability in common areas is generally premised on the control a landlord maintains over the common areas.*

*Matthews v. Amberwood Assocs. Ltd. P'ship*, 351 Md. 544, 554, 719 A.2d 119 (1998)(quoting *Langley Park Apts. v. Lund*, 234 Md. 402, 407, 199 A.2d 620 (1964))(emphasis added). The duties imposed upon a landlord with regard to those areas

---

5. *Sherman v. Concourse Realty Corp.*, 47 A.D.2d 134, 365 N.Y.S.2d 239 (N.Y.Sup.Ct.1975), relied upon by the *Scott* Court, involved the landlord of a multiple dwelling, who had actual knowledge of criminal activities within the building. Although the scope of the landlord's duty was merely to exercise reasonable diligence in caring for the upkeep of common areas, the appellate court concluded that the tenant established a *prima facie* cause of action for negligence, where the landlord had allowed the only security devices leading to common hallways to fall into a state of disrepair. Similarly, in *Ramsay v. Morrissette*, 252 A.2d 509 (D.C.1969), also cited by the *Scott* Court, the appellate court reversed a summary judgment entered in favor of a landlord, concluding instead that the tenant, who claimed to have been assaulted in her apartment as a result of her landlord's negligence, sufficiently stated a cause of action in negligence because:

> [T]he landlord (1) did not replace the deceased full-time resident manager, (2) failed to prevent intruders and strangers from sleeping in the halls and using the halls as urinals, (3) failed to inform the police of the above situation, and (4) failed to install a lock on the front door.

*Id.* at 168, 359 A.2d 548.

under the tenant's control, however, are governed by general common law principles and, therefore, "when the owner has parted with his [or her] control, the tenant has the burden of the proper keeping of the premises, in the absence of an agreement to the contrary; and for any nuisance created by the tenant the landlord is not responsible." *Id.* at 555, 719 A.2d 119 (quoting *Marshall v. Price,* 162 Md. 687, 689, 161 A. 172 (1932)). It has been noted that the law governing situations involving injury to tenants occurring inside the leased premises is "less settled" in Maryland. *Id.* at 556, 719 A.2d 119. Indeed, a "common thread" running through most cases in which the landlords were found to have been liable, is the ability of the landlord to exercise, to some extent, control over the condition at issue and to attempt to prevent injuries by taking proactive measures. *Id.* at 557, 719 A.2d 119 (citing *Scott,* 278 Md. at 165–66, 359 A.2d 548) (holding a landlord liable for "injuries sustained by tenants as a result of criminal acts committed by others in the common areas *within the landlord's control* "); *Macke Laundry Service Co. v. Weber,* 267 Md. 426, 431, 298 A.2d 27 (1972)(noting that "[the Court of Appeals] decisions have consistently held a landlord liable for ... failure to remedy defects ... *over which he [or she] retains control* "); *Elmar Gardens, Inc. v. Odell,* 227 Md. 454, 457, 177 A.2d 263 (1962)(holding that a landlord has a duty with regard to areas "under his [or her] control").

Because the allegedly negligent behavior occurred *within* the leased premises, we must proceed with the analysis applicable thereto, rather than the common law of Maryland which, as stated above, has typically pertained to injuries occurring in the common areas of a multi-dwelling complex. Faced with a dearth of Maryland law relevant to the case at hand, we look to other jurisdictions that have addressed this issue.[6]

---

6. Although *Matthews, supra,* pertained to an incident occurring within the leased premises, the injuries were caused by a vicious dog, owned by the plaintiff tenant, in derogation of the lease. In light of the contractual obligation imposed on the tenant which should have been enforced by the landlord, the Court held the defendant landlord liable, reasoning that the violation of the lease caused the landlord to regain

In *Fields v. Moore*, 953 S.W.2d 523 (Tex.App.1997), appellants—tenant and her children—rented a house from appellee landlord. Appellee's son, who rented the property adjacent to appellants, sexually assaulted appellant and, consequently, appellant brought suit against appellee, alleging that, as landlord, appellee owed appellant a duty to secure the rental premises against criminal acts of third parties. The trial court granted summary judgment in favor of appellee landlord, finding that she had no duty to protect appellants. Affirming the judgment of the trial court, the appellate court held:

> Whatever duty a lessor may have to protect persons injured on the leased premises against the criminal acts of third parties, that duty does not arise in the absence of a foreseeable risk of harm. Accordingly, the [lessor is] entitled to summary judgment if [he or she] established as a matter of law that violent criminal acts ... were not foreseeable.

*Id.* at 524.

The Supreme Court of Michigan, however, has been reluctant to delineate a bright-line rule that would extend a landlord's duty to protect tenants from incidents which occur within the boundaries of the leased premises, noting:

> Defendant [landlord] leased its premises to the [plaintiff tenant]. For this act, by itself, our law imposes no liability and indeed should impose none. Whether or not the landlord retains any responsibility for actions which occur within the confines of the now leased premises is not now before this Court and need not be answered. It would appear, however, that he [or she] would not retain any responsibility for such actions except in the most unusual circumstances.

*Samson v. Saginaw Professional Building, Inc.*, 393 Mich. 393, 224 N.W.2d 843, 849 (1975). These unusual circumstances have yet to be defined; however, it can be inferred from later cases, such as *Williams v. Detroit*, 127 Mich.App.

---

control of the premises. Thereafter, the Court engaged in the traditional analysis with regard to injuries occurring in the common areas or those areas under the landlord's control.

464, 339 N.W.2d 215 (1983), that undertaking to employ security guards would give rise to a duty to reasonably carry out such an undertaking, as the landlord would be responsible for—or, in other words, in control of—the hiring and overseeing of the security patrol.

More restrictive still is the reasoning of the Court of Appeals of Missouri, which remarked:

> The court finds no Missouri case in which the relationship of landlord-tenant has been held to be a "special relationship" that might give rise to a duty by the landlord to protect the tenant from the criminal acts of third parties. The modern trend of authority has been to hold the landlord liable under special circumstances. Thus, where a landlord had notice of repeated criminal activity on the premises, the portion of the premises where the criminal activity occurred was exclusively in the landlord's control, *and where the landlord had the exclusive power to take preventative action but failed to do so*, the landlord was held liable when his tenant became the victim of a criminal assault.
>
> *In approaching the problem, authorities have recognized that the duty is not determined so much by the foreseeability of the criminal act, but whether one party is in a superior position to be aware of the danger and to take measures to guard against it.*

*Advance Rental Centers, Inc. v. Brown,* 729 S.W.2d 644, 646 (Mo.App.1987). The rationale behind the above holding is in line with the theme which runs through cases such as the one at hand. It is the degree of control over the premises which determines the extent of liability.

The most strikingly similar case comes from the Supreme Court of South Carolina. In *Cramer v. Balcor Property Management, Inc.,* 312 S.C. 440, 441 S.E.2d 317 (1994), as here, the deceased was murdered in her apartment by an unknown intruder who entered the apartment by prying open the patio sliding glass door. A wrongful death action was brought against the appellees, who were the managing agents and owners of the apartment complex. Relying on *Cooke v.*

*Allstate Management Corp.,* 741 F.Supp. 1205 (D.S.C.1990) [7], the court dismissed the tenant's attempt to extend the duty owed by store owners and innkeepers to landlords, articulating the differences between the relationships as follows:

> Places to which the general public are invited might indeed anticipate, either from common experience or known fact, that places of general public resort are also places where what men can do, they might. One who invites all may reasonably expect that all might not behave, and bears responsibility for injury that follows the absence of reasonable precaution against that common expectation. . . .

> Tenants in a huge apartment complex, or a tenant on the second floor of a house converted to an apartment, do not live where the world is invited to come. Absent agreement, the landlord cannot be expected to protect them against the wiles of felonry any more than the society can always protect them upon the common streets and highways leading to their residence or indeed in their home itself.

> An apartment building is not a place of public resort where one who profits from the very public it invites must bear what losses that public may create. It is of its nature private and only for those specifically invited. The criminal can be expected anywhere, any time, and has been a risk of life for a long time.

*Cramer,* 441 S.E.2d at 318 (citing *Cooke,* 741 F.Supp. at 1213). In light of the distinction between the duty owed by innkeepers and landlords, the court declined to hold that landlords owe tenants a duty to protect them merely based on the existence of the relationship. The court ultimately held that "[n]either common law nor the South Carolina Residential Landlord–Tenant Act, imposes a duty on a landlord to provide

---

7. The facts in *Cooke* were nearly identical to those pled in *Cramer:* the intruder entered the tenant's apartment through a sliding glass door located on the balcony of the victim's balcony. The victim alleged that the intruder accessed the balcony via a ladder, however, which gave rise to a factual issue of whether the ladder had been used by the attacker. For this reason, the summary judgment motion filed by the landlord was denied.

protection to tenants against criminal activity of third parties."
*Id.* at 319.

██ We deem the analysis employed by the South Carolina court to be persuasive. In the case at hand, the intruder entered the Hemmings's apartment via a sliding glass door, which had been equipped with a "Charlie bar" and deadbolt locks, pursuant to appellees' policy. The legal responsibility for the upkeep of those security devices and the burden of preventing the entrance of intruders necessarily fell on the tenants of Pelham Wood, rather than appellees. If at any time, the tenants had reported that the "Charlie bar" or the locks were in disrepair, the duty would have been on appellees to fix them. From the facts as gleaned from the pleadings, interrogatories, deposition, and admissions, however, no such complaint was reported. In the absence of any such complaint, because the criminal act in the case *sub judice* occurred inside of the demised premises—an area over which the landlord was no longer able to exert control—we hold that appellees did not owe appellant a duty. As noted by the trial court, the fact that entry by the intruder could only be accomplished by forcibly destroying the existing lock on the door supports a finding that the security devices provided by appellees were in working order:

> I mean, I can't get by the first tier. You say on one hand that the intruder had to break in. That obviously means the place was secure and there were locks that properly worked and the door was secured. And if there was nothing wrong with it and he didn't break in, that means the tenant in this particular case allowed an intruder in. Under either theory, I don't see where there is any duty of the landlord to go any further than that. I think the Court of Special Appeals will have to sort it out.

The granting of summary judgment turns on the absence of a dispute as to material fact or, in other words, a party's failure to present evidence which would give rise to such a dispute. From the facts presented, a fact finder would be constrained to conclude that there could be no showing that appellees' failure to maintain the common areas was the

# 324

proximate cause of the fatal event. Consequently, the grant of summary judgment was proper.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**