**John W. CRAMER, as personal representative of the estate of Genevieve Zitricki, deceased, Plaintiff,**

v.

**BALCOR PROPERTY MANAGEMENT, INC., Hidden Lake Partners, an Illinois Limited Partnership, and T. Walter Brashier, individually, and d/b/a Hidden Lake Apartments, Defendants.**

**Civ. A. No. 6:92–3191–20.**

United States District Court,
D. South Carolina,
Greenville Division.

April 7, 1994.

Douglas Franklin Patrick, and Stephen R.H. Lewis, Greenville, SC, for plaintiff.

W. Howard Boyd, Jr. and James P. Walsh, Greenville, SC, for defendants Balcor Property Management, Inc. and Hidden Lake Partners, an Illinois Ltd. Partnership.

## ORDER

HERLONG, District Judge.

This matter is before the court on the motion of the defendants Balcor Property Management, Inc. ("Balcor") and Hidden Lake Partners ("Hidden Lake") for summary judgment. For the reasons stated in this order, the motion is granted.

This wrongful death action was brought by John W. Cramer ("Cramer"), as the personal representative of the deceased, Genevieve Zitricki ("Zitricki"). Zitricki was murdered in her apartment at Hidden Lake Apartments in Greenville, South Carolina on April 5, 1990. The police investigation indicated that an unknown assailant entered Zitricki's

apartment through the sliding glass door off of her patio by using a tool to pry the door open. An autopsy concluded the cause of death was a head injury, possibly caused by the same tool used to gain entry, and asphyxia. Cramer filed this lawsuit on November 6, 1992, to recover for Zitricki's death. As a basis for recovery, Cramer argued that either a landlord has a duty to its tenants to protect them from criminal activities of third parties, or that the facts of this case fit into one of the established exceptions to the traditional rule of non-liability of landlords.

■ Balcor and Hidden Lake move for summary judgment. The grounds for their motion are that they, as landlords, did not owe a duty to their tenant Zitricki to protect her from the criminal assault of a third party, and that the facts of this case do not fit into any exception to the general rule of non-liability for landlords. Because no South Carolina court had ever dealt with the issue of whether landlords have a duty to protect their tenants from the criminal activity of third parties, the question was certified to the Supreme Court of South Carolina. On February 7, 1994, the Supreme Court answered the question in the negative.[1] "Under South Carolina law a landlord does not owe a duty to a tenant to provide security in and around a leased premises to protect the tenant from criminal activity of third parties." *Cramer v. Balcor Property Management, Inc.,* —— S.C. ——, ——, 441 S.E.2d 317, 319 (1994). Therefore, Balcor and Hidden Lake owed no special duty to Zitricki. Although Cramer has requested the opportunity to rebrief the issues in light of the Supreme Court's ruling, additional argument will be of no assistance in the disposition of the summary judgment motion.

Because it is now clear that Balcor and Hidden Lake had no special duty to Zitricki pursuant to the landlord/tenant relationship, the court must determine if an exception to the general rule that South Carolina common law imposes upon a landlord no general affirmative duty to maintain leased premises in a

safe condition applies in this case. There are three exceptions that Cramer argues are applicable. They are the "affirmative acts" exception, the "undertaking" exception and the "common area" exception. *See Cooke v. Allstate Management Corp.,* 741 F.Supp. 1205, 1209 (D.S.C.1990). In *Cooke,* the court recognized that these exceptions might be applicable to a situation similar to the one involved in this case, but strictly applied the exceptions to the particular facts present. *Id.* at 1209–1212. In applying the exceptions to the particular facts of this case, the court is convinced that the conduct involved here does not fit into any of the three exceptions.

■ The *Cooke* court recognized that "one who assumes to act, even though under no obligation to do so, may become subject to the duty to act with due care." *Id.* at 1209–10, quoting *Crowley v. Spivey,* 285 S.C. 397, 406, 329 S.E.2d 774, 780 (Ct.App.1985). This is known as the affirmative acts exception. Cramer argues that by initially hiring a "courtesy officer" to patrol the grounds and then terminating that officer without replacing him, Balcor and Hidden Lake breached this duty. Cramer misapprehends the scope of the affirmative acts exception. The exception envisions a situation where the act of the landlord leads directly to the injury complained of. The cases which fit this exception are those where there is a stronger connection between the act and the injury, such as where a landlord leaves an apartment door unlocked and a third party enters. *See, e.g., McCappin v. Park Capitol Corp.,* 42 N.J.Super. 169, 126 A.2d 51 (1956).

■ Cramer next argues that Balcor and Hidden Lake breached a duty which arose pursuant to the undertaking exception. Under this exception, if a landlord undertakes to make repairs, they must be performed with due care. *See, e.g., Mcquillen v. Dobbs,* 262 S.C. 386, 204 S.E.2d 732 (1974). Cramer claims that Zitricki made a request to a maintenance employee of Cramer and Hidden Lake that an additional safety device be installed on her sliding glass door. It is

---

1. The opinion of the Supreme Court of South    Carolina is attached to this order as Appendix I.

undisputed that Cramer and Balcor did not install such a device. Again, however, Cramer misunderstands the scope of the exception. In order to fall within the undertaking exception, the defendant must undertake to do something. Here, it is clear that Cramer and Balcor did not undertake to add additional security devices to Zitricki's sliding glass door. Had they done so, and somehow installed those devices in a negligent manner, then this case might possibly fit within the undertaking exception. There is no appreciable difference between the facts here and the facts of *Cooke*. The fact that Zitricki may have requested the service, does not change the fact that Cramer and Balcor never undertook to perform the work.

Finally, Cramer attempts to hold Balcor and Hidden Lake liable under the common areas exception. Cramer contends that the design and operation of the apartment complex was inadequate due to the lack of fencing around the perimeter, the insufficient lighting, the lack of security guards, and the poor locks on apartment doors. This exception is inapplicable to these facts. The common areas exception simply states that a landlord has a duty to maintain the common areas of a leased property in a safe condition. As correctly noted in *Cooke*, "[t]his rule clearly has never been applied in South Carolina to anything except physical injuries resulting directly from the *condition* of the premises themselves." *Cooke*, 741 F.Supp. at 1211 (emphasis in original). To attempt to apply the common areas exception to this situation would stretch the exception to the point of swallowing the rule.

The facts of this case do not fit within any of the exceptions to the traditional rule of non-liability of landlords. In addition, the Supreme Court of South Carolina has expressly ruled that a landlord has no duty to a tenant to provide security in and around a leased premises to protect the tenant from criminal activity of third parties. For these reasons, Balcor and Hidden Lake's motion for summary judgment is hereby granted.

**IT IS SO ORDERED.**

APPENDIX I

THE STATE OF SOUTH CAROLINA

In The Supreme Court

John W. Cramer, as
Personal Representative of
the Estate of Genevieve
Zitricki, Deceased, Plaintiff,

v.

Balcor Property Management,
Inc., and Hidden Lake
Partners, an Illinois Limited
Partnership, T. Walker Brashier
individually and d/b/a Hidden
Lake Apartments, Defendants.

On Certification from
the United States District Court
for the District of South Carolina

Opinion No. 24004
Heard January 4, 1994—
Filed February 7, 1994

CERTIFIED QUESTIONS ANSWERED

Douglas Franklin Patrick and Stephen R.H. Lewis, both of Covington & Patrick, of Greenville, for Plaintiff.

W. Howard Boyd, Jr., and James P. Walsh, both of Rainey, Britton, Gibbes & Clarkson; and Ray D. Lathan, of Lathan & Barbare, all of Greenville, for Defendants.

C. Mitchell Brown, of Nelson, Mullins, Riley & Scarborough, of Columbia, for the South Carolina Defense Trial Attorneys' Association, Amicus Curiae.

FINNEY, A.J.: Pursuant to Rule 228, SCACR, the following questions have been

certified to this Court by the United States District Court for the District of South Carolina:

> Does a landlord owe a duty to a tenant to provide security in and around a leased premises so as to protect the tenant from criminal activity of third parties?
>
> If so, is the duty derived from the South Carolina Residential Landlord–Tenant Act, S.C.Code Ann. Section 27–40–10, *et seq.* (1991), or from common law and under what circumstances does that duty arise?

### FACTS

The deceased Genevieve Zitricki was murdered in her apartment on or about April 5, 1990. The unknown assailant entered her apartment by prying open the patio sliding glass door. The plaintiff instituted a wrongful death action against the managing agents and owners of the apartment complex. The plaintiff alleges that the defendants had a duty to protect the deceased tenant from the criminal acts of a third party and breached this duty.

The defendant moved for summary judgment, asserting that there was no duty owed by the landlord to the decedent to protect her from criminal activity of a third party. As a result of that motion, the above questions were certified to this Court.

### DISCUSSION

The initial question before this Court is whether a landlord has a duty to provide security to protect tenants from the criminal activity of third parties.

The plaintiff urges this Court to recognize a view of the relationship between the landlord and tenant which is analogous to that of the innkeeper and guest relationship. In so doing, the plaintiff urges the Court to adopt the corresponding duty of the landlord to protect its tenants from foreseeable criminal activity. The plaintiff asks the Court to find that those persons in exclusive control of the access to their property and who have the power to provide the necessary protection, bear the responsibility of reasonably protect-ing their tenants, invitees, and guests from foreseeable criminal activity.

The plaintiff claims that the landlord's duty is derived from common law. This conclusion is based on the assumption that the landlord/tenant relationship is analogous to innkeeper/guest and store owner/invitee relationships. The plaintiff asserts that the broader view draws little distinction between the above relationships. The plaintiff contends that the trend has been to impose a duty on innkeepers and merchants to protect their guests or invitees from foreseeable criminal activity of third parties. *See Bullard v. Ehrhardt*, 283 S.C. 557, 324 S.E.2d 61 (1984); *Munn v. Hardee's Food System, Inc.*, 274 S.C. 529, 266 S.E.2d 414 (1980); and *Shipes v. Piggly Wiggly St. Andrews, Inc.*, 269 S.C. 479, 238 S.E.2d 167 (1977). The district court in *Cooke v. Allstate Management Corp.*, 741 F.Supp. 1205 (D.S.C.1990) considered the same cases relied on by this appellant and rejected the argument that South Carolina courts would extend the exceptions to the general rule to recognize an affirmative duty to protect tenants from criminal conduct.

*Cooke v. Allstate Management Corp.* is directly on point in addressing the questions raised here. In *Cooke*, the intruder gained access to the tenant's apartment through a sliding glass door. The tenant alleged that the attacker was able to reach her balcony by using a ladder left nearby. The tenant in *Cooke* alleged that the landlord was negligent for a number of reasons, including leaving an unsecured ladder nearby. The district court decided there was a factual issue whether the landlord's ladder was used by the attacker. Thus, the defendant's motion for summary judgment was denied on the negligence claim based upon the questions surrounding use of the ladder.

The plaintiff in *Cooke*, as in this case, attempted to extend the duty owed by store owners and innkeepers to landlords. However, the district court found that argument unpersuasive "in light of the cautious approach the South Carolina appellate courts have taken even in those contexts." *Cooke*, 741 F.Supp. at 1213. The district court was not convinced that the assumption was sound

that the relationships of store owner/invitee and innkeeper/guest are analogous to the relationship of landlord/tenant. The difference between the relationships was articulated as follows:

[P]laces to which the general public are invited might indeed anticipate, either from common experience or known fact, that places of general public resort are also places where what men can do, they might. One who invites all may reasonably expect that all might not behave, and bears responsibility for injury that follows the absence of reasonable precaution against that common expectation....

Tenants in a huge apartment complex, or a tenant on the second floor of a house converted to an apartment, do not live where the world is invited to come. Absent agreement, the landlord cannot be expected to protect them against the wiles of felonry any more than the society can always protect them upon the common streets and highways leading to their residence or indeed in their home itself.

An apartment building is not a place of public resort where one who profits from the very public it invites must bear what losses that public may create. It is of its nature private and only for those specifically invited. The criminal can be expected anywhere, any time, and has been a risk of life for a long time.

*Id.* at 1213, (noting *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984)). The district court found the landlord/tenant relationship to be fundamentally different from the relationships for which South Carolina law will impose a duty to protect against criminal activity.

We agree with the U.S. District Court in *Cooke* in finding a fundamental distinction between the relationships of landlord/tenant and store owner/invitee and innkeeper/guest. Accordingly, we decline to find that landlords owe an affirmative duty to protect tenants from criminal activity merely by reason of the relationship.[1]

The plaintiff concedes that no statutory duty upon the landlord arises from the S.C. Residential Landlord–Tenant Act. We agree. The South Carolina Residential Landlord–Tenant Act does not impose a duty upon landlords to protect tenants from criminal activity of others.[2] While section 27–40–440 imposes a duty on a landlord to keep the premises in a fit and habitable condition,[3] the statute does not impose a duty on a landlord to provide protection to tenants against criminal activity by third parties.[4]

### CONCLUSION

We answer the question as presented to us in the negative. Under South Carolina law a landlord does not owe a duty to a tenant to provide security in and around a leased premises to protect the tenant from criminal activity of third parties. Neither common law nor the South Carolina Residential Landlord–Tenant Act, imposes a duty on a landlord to provide protection to tenants against criminal activity of third parties.

CERTIFIED QUESTIONS ANSWERED.

CHANDLER, TOAL and MOORE, JJ., concur.

HARWELL, C.J., not participating.

---

1. The plaintiff is not precluded from asserting a general negligence principle. A duty may arise under the particular circumstances of the individual case based upon a showing of negligence constituting the proximate cause of the loss.

2. S.C.Code Ann. §§ 27–40–10 to –940 (1991).

3. *See Watson v. Sellers,* 299 S.C. 426, 385 S.E.2d 369 (Ct.App.1989).

4. *Cooke,* 741 F.Supp. at 1208.